**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dorothy Padilla,<br><br>          Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>          Defendant. | No. CV-17-02737-PHX-BSB<br><br>**ORDER** |

Plaintiff Dorothy Padilla seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying her application for benefits under the Social Security Act (the "Act"). The parties have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b), and have filed briefs in accordance with Local Rule of Civil Procedure 16.1. For the following reasons, the Court reverses the Commissioner's decision and remands for a determination of benefits.

**I.     Procedural Background**

On June 24, 2013, Plaintiff applied for social security disability income ("SSDI") for a period of disability and disability insurance benefits under Title II of the Act. (Tr. 29.)[1]  On December 11, 2013, she also applied for supplemental security income (SSI) under Title XVI of the Act. (*Id*.) After the Social Security Administration ("SSA") denied Plaintiff's initial application and her request for reconsideration, she requested a

---
[1] Citations to "Tr." are to the certified administrative record. (Doc. 13.)

hearing before an administrative law judge ("ALJ"). (*Id.*) After conducting a hearing, on February 5, 2016 the ALJ issued a decision finding Plaintiff not disabled under the Act.[2] (Tr. 29-41.) On June 15, 2017, the Social Security Administration Appeals Council denied Plaintiff's request for review. (Tr. 1-6.) Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. Administrative Record

The record before the Court establishes the following history of diagnoses and treatment related to Plaintiff's physical impairments.[3] The record also includes medical opinions.

### A. Relevant Treatment History

Plaintiff received treatment from Steven Sumpter, D.O., at Integrated Medical Services ("IMS") beginning in October 2011 and continuing through 2015. (Doc. 16 at 6-7 (citing (Tr. 399-403 (Oct. 11, 2011); Tr. 702-05 (Dec. 5, 2011); Tr. 396-99 (Dec. 18, 2012); Tr. 504-06 (May 1, 2013); Tr. 500-03 (Aug. 21, 2013); Tr. 496-99 (Nov. 5, 2013); Tr. 493-95 (Dec. 20, 2013); Tr. 552-55 (Jan. 30, 2014); Tr. 673-76 (March 11, 2014; Tr. 669-72 (March 28, 2014); Tr. 664-68 (April 22, 2014); Tr. 569-63 (May 22, 2014); Tr. 655-58 (June 30, 2014); Tr. 651-54 (July 15, 2014); Tr. 860-64 (Mar. 23, 2015)).)

In November 2013, Dr. Sumpter referred Plaintiff to the orthopedic clinic at IMS, where she was evaluated by Navtej Tung, M.D. (Tr. 518-22.) Plaintiff reported that she had chronic low back pain that radiated into her legs. (Tr. 518.) Plaintiff reported that she could sit for about an hour, she could stand for thirty minutes, and she had difficulty walking any distance. (*Id.*) On examination, Dr. Tung observed that Plaintiff had tenderness at L4, L5, S1 that was "worse with forward flexion of the lumbar spine" and with extension. (Tr. 521.) A straight-leg raising test was positive on the left side. (*Id.*)

---

[2] Plaintiff had been previously found not disabled in February 2012. (Tr. 29.) That decision was not given *res judicata* effect in the ALJ's 2016 decision and it is not at issue before this Court. (*See* Tr. 29-30.)

[3] Plaintiff states that her appeal to this Court focuses on her orthopedic impairments. (Doc. 16 at 3-4.) Therefore, the Court also focuses on those impairments.

An MRI of Plaintiff's lumbar spine showed "bilateral pars defect" at L5-S1 "resulting in grade 1 anterolisthesis." (Tr. 522.) The MRI also showed "some facet degenerative changes . . . a disc bulge, and foraminal narrowing." (*Id.*) Dr. Tung concluded that Plaintiff was "a good candidate for interventional procedures." (Tr. 522.) Therefore, Plaintiff had lumbar epidural steroid injections on November 21, 2013 (Tr. 536), January 3, 2014 (Tr. 528 (noting chronic back pain with radiation the legs)), and January 21, 2014 (Tr. 526, 598 (noting chronic back pain with radiation to the legs)). She had an L4-S1 bilateral medial branch nerve block on August 7, 2014 for "chronic low back pain." (Tr. 590-91.) Plaintiff had lumbar radiofrequency ablation procedures on June 15 and 24, 2015. (Tr. 756, 749.) The June 2015 treatment notes state that Plaintiff's lumbar sacral spine exhibited tenderness on palpation, muscle spasms, and pain on motion. (Tr. 750, 757.) Straight-leg raising tests were positive. (*Id.*)

On referral from IMS, Plaintiff received physical therapy for her back pain. (Tr. 612-14, 620.) During her initial visit on March 12, 2014, Plaintiff reported that she had back pain that "fluctuate[d] but [was] constant." (*Id.*) Plaintiff's pain disturbed her sleep and was worse with sitting longer than thirty minutes, bending, lifting or carrying groceries. (*Id.*) On examination, Plaintiff had increased pain on forward bending, side bending, and reported that pain travelled down both legs. (Tr. 613.) During a March 2014 appointment, Plaintiff reported that her pain fluctuated and she did not have any pain at that time. (Tr. 610.) However, on examination, Plaintiff reported that "STM" to the back was painful. (*Id.*) On June 8, 2014, Plaintiff was discharged from physical therapy for "non-compliance." (Tr. 609.)

### B. Opinion Evidence

#### 1. Treating Physician Steven Sumpter, D.O.

Treating physician Dr. Sumpter completed three assessments of Plaintiff's ability to perform work-related physical activities.[4] On December 20, 2013, Dr. Sumpter

---

[4] The Court considers the opinions rendered after the alleged disability onset date of February 14, 2012. (*See* Tr. 37 (noting that medical opinions made in 2011 had no probative value because there were rendered prior to the 2012 onset date).)

- 3 -

assessed Plaintiff and opined that she could not work eight hours a days, five days a week on a regular basis due to her "lumbar radiculopathy, facet syndrome, bulging disc, spondylolisthesis of the lumbar spine, and morbid obesity." (Tr. 489.) He opined that, in an eight-hour day, Plaintiff could sit for two hours, stand or walk for two hours, and lift or carry less than ten pounds. (*Id.*) Dr. Sumpter stated that it was "medically necessary" for Plaintiff to change position every twenty-one to forty-five minutes. (*Id.*) Dr. Sumpter also opined that due to pain and fatigue, Plaintiff would be "[o]ff task 16-20% of an 8-hour work day." (Tr. 490.) Dr. Sumpter confirmed that his opinions were based on treatment notes, medical records, radiographic records, and Plaintiff's responses to treatment. (*Id.*)

On January 19, 2015, Dr. Sumpter completed another assessment of Plaintiff's ability to perform work-related physical activities. (Tr. 621.) Dr. Sumpter opined that Plaintiff could not work on a regular and consistent basis due to "severe, constant low back pain radiating into legs." (*Id.*) Dr. Sumpter assessed the same exertional limitations that he assessed in December 2013. (*Compare* Tr. 489 *with* Tr. 621.) Dr. Sumpter again opined that Plaintiff needed to change positions every twenty-one to forty-five minutes. (*Id.*) Dr. Sumpter also opined that pain would cause severe limitations, defined as being "[o]ff task greater than 21% of an 8-hour work day." (Tr. 622.)

On August 25, 2015, Dr. Sumpter completed another assessment of Plaintiff's ability to perform work-related physical activities. (Tr. 740-41.) He found that Plaintiff's "chronic back pain, myalgia, headaches, chest pain, and difficulty breathing" affected her ability to function and precluded an eight-hour work day. (Tr. 740.) He assessed the same exertional limitations he had assessed in December 2013 and January 2019. (*Compare* Tr. 621 *with* Tr. 740.) He also opined that Plaintiff needed to change position every twenty-one to forty-five minutes. (Tr. 740.) Dr. Sumpter opined that Plaintiff's pain, fatigue, dizziness, and headaches resulted in "moderately severe" limitations that would cause Plaintiff to be "[o]ff task 16-20% of an 8-hour work day." (Tr. 741.)

### 2. State Agency Physician Maria Pons, M.D.

On March 19, 2014, Dr. Maria Pons, a state agency physician, reviewed the medical record and completed a residual functional capacity assessment ("RFC"). (Tr. 160.) Dr. Pons opined that Plaintiff could sit, stand, and walk about six hours in an eight-hour day. (Tr. 161.) She opined that Plaintiff could occasionally lift or carry up to twenty pounds, and could frequently lift or carry up to ten pounds. (*Id.*) Dr. Pons found that Plaintiff could frequently climb ramps and stairs, occasionally climb ladders, ropes, or scaffolds, frequently stoop, kneel, crouch, and crawl, and frequently handle. (Tr. 161-62.)

## III. Administrative Hearing Testimony

During the October 16, 2015 administrative hearing, Plaintiff testified that she was unable to work due to "discomfort" caused by "a slipped disc in [her] back." (Tr. 86.) She also complained of fibromyalgia, depression, and anxiety. (*Id.*) Plaintiff testified that she had received treatment from her primary care physician Dr. Sumpter for the previous three years, and he had referred her to pain management. (Tr. 87.) Plaintiff testified that she was taking prescribed pain medications, including Percocet and cyclobenzaprine, which helped but did not eliminate her pain. (Tr. 87-88, 95-96.) Plaintiff testified that medications "subdue[d] the throbbing pain," but she was never pain free. (Tr. 90-91, 94-95.) Plaintiff stated that she had received injections and physical therapy for back pain, but that she did not experience substantial benefit from those treatments. (Tr. 91.)

Plaintiff also testified that she could stand for twenty minutes and walk for about an hour. (Tr. 90, 92.) Plaintiff testified that she could sit for about forty-five minutes and then she either had to "take a pill and ice [her] back" or "heat [her] back." (*Id.*) Plaintiff testified that "pain management" had instructed her not to lift anything heavier than a gallon of milk. (Tr. 93.) Plaintiff testified that she napped every day from 11:00 to 2:30, due to pain, fatigue, and depression. (Tr. 99.) Plaintiff testified that she could take out

the trash, do laundry, and prepare meals. (Tr. 93-94.) However, Plaintiff was "instructed not to sweep or mop" because it was "one of the worst things for [her] back." (*Id*.)

A vocational expert also testified at the administrative hearing. (Tr. 104-113 (testifying telephonically).) In response to a question from the ALJ based on the assessment by Dr. Pons (*see* Tr. 160-62), the vocational expert testified that Plaintiff could perform her past work as a photocopy machine operator. (Tr. 108-09.) The vocational expert also testified that sustained work would be precluded for an individual with the limitations that Dr. Sumpter assessed. (Tr. 110-12; *see* Tr. 489, 621, 740.) The vocational expert further testified that sustained work would be precluded for a person who had to nap for "longer than usual breaks" during the day, as Plaintiff had testified. (Tr. 112.)

**IV. The ALJ's Decision**

A claimant is considered disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A) (nearly identical standard for SSI benefits).[5] To determine whether a claimant is disabled, the ALJ uses a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

**A. The Five-Step Sequential Evaluation Process**

In the first two steps, a claimant seeking disability benefits must initially demonstrate (1) that she is not presently engaged in a substantial gainful activity, and (2) that her medically impairment or combination of impairments is severe. 20 C.F.R. §§ 404.1520(b) and (c), 416.920(b) and (c). If a claimant meets steps one and two, there are two ways in which she may be found disabled at steps three through five. At step three, she may prove that her impairment or combination of impairments meets or equals

---

[5] The definition of disability is the same for SSDI and SSI benefits. *See Diedrich v. Berryhill*, 874 F.3d 634, 637 (9th Cir. 2017). Therefore, the Court does not always include parallel citations when citing the relevant regulations. *See e.*g., 20 C.F.R. §§ 404.1520 (SSDI), *id*. § 416.920 (SSI).

- 6 -

an impairment in the Listing of Impairments found in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumptively disabled. If not, the ALJ determines the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). At step four, the ALJ determines whether a claimant's RFC precludes her from performing her past relevant work. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant establishes this prima facie case, the burden shifts to the government at step five to establish that the claimant can perform other jobs that exist in significant numbers in the national economy, considering the claimant's RFC, age, work experience, and education. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the government does not meet this burden, then the claimant is considered disabled within the meaning of the Act.

**B.     The ALJ's Application of the Five-Step Evaluation Process**

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date, February 14, 2012. (Tr. 32.) At step two, the ALJ found that Plaintiff had the following severe impairments: "morbid obesity, fibromyalgia, migraine headaches, degenerative disc disease, bilateral pars defect, anterolisthesis, vitamin D deficiency, bipolar disorder, and obsessive-compulsive disorder (20 CFR 404.1520(c) and 416.920(c))." (*Id.*) The ALJ found Plaintiff did not have an impairment or combination of impairments and that met or medically equaled the severity of a listed impairment. (Tr. 33.)

The ALJ found that Plaintiff had the RFC to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)." (Tr. 34.) The ALJ clarified that Plaintiff could "frequently climb ladders, ropes, or scaffolds[,] frequently stoop, kneel, crouch and crawl[,] and frequently handle." (*Id*.) The ALJ also found Plaintiff "could perform simple routine and repetitive work tasks involving simple work-related decisions and simple instructions." (*Id.*) The ALJ concluded that Plaintiff "should not perform work requiring public contact" other than "[i]ncidental public contact." (*Id.*)

The ALJ concluded that Plaintiff could perform her past relevant work as a photocopying machine operator. (Tr. 39.) The ALJ alternatively found that, based on Plaintiff's age, education, and RFC, she could perform other jobs that existed in significant numbers in the national economy. (Tr. 39-41.) Therefore, the ALJ concluded that Plaintiff was not under a disability as defined in the Act from the alleged onset date, February 14, 2012, through the date of her decision. (Tr. 41.) Therefore, the ALJ denied Plaintiff's applications for benefits. (*Id.*)

## V.  Standard of Review

The district court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The district court reviews the Commissioner's decision under the substantial evidence standard and must affirm the Commissioner's decision if it is supported by substantial evidence and it is free from legal error. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Substantial evidence means more than a mere scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted); *see also Webb v Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

In determining whether substantial evidence supports a decision, the court considers the record as a whole and "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation and citation omitted). The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (citing *Andrews*, 53 F.3d at 1041).

The court applies the harmless error doctrine when reviewing an ALJ's decision. Thus, even if the ALJ erred, the decision will not be reversed if the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion"); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (stating that "[a] decision of the ALJ will not be reversed for errors that are harmless.").

## VI. Plaintiff's Claims

Plaintiff asserts that the ALJ erred by (1) rejecting Dr. Sumpter's opinions related to Plaintiff's ability to perform work-related physical activities, and (2) rejecting Plaintiff's symptom testimony without providing clear and convincing reasons supported by substantial evidence in the record. (Doc. 16 at 1-2.) Plaintiff asserts that these errors were harmful because the vocational expert testified that work would be precluded based on Dr. Sumpter's opinions or based on Plaintiff's symptom testimony. (*Id.*) The Commissioner asserts that the ALJ's decision is free of harmful error. (Doc. 17.)

### A. Medical Source Opinion Evidence

In weighing medical source opinion evidence, the Ninth Circuit distinguishes between three types of physicians: (1) treating physicians, who treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is given to a treating physician's opinion. *Id.* The ALJ must provide clear and convincing reasons supported by substantial evidence for rejecting a treating or an examining physician's uncontradicted opinion. *Id.*; *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). An ALJ may reject the controverted opinion of a treating or an examining physician by providing specific and legitimate reasons that are supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Reddick*, 157 F.3d at 725.

Opinions from non-examining medical sources are entitled to less weight than opinions from treating or examining physicians. *Lester*, 81 F.3d at 831. Although an ALJ generally gives more weight to an examining physician's opinion than to a non-examining physician's opinion, a non-examining physician's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). When evaluating medical opinion evidence, the ALJ may consider "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion . . . ." *Orn*, 495 F.3d at 631.

### B. The ALJ Erred by Discounting Dr. Sumpter's Opinions

The ALJ considered three opinions from Plaintiff's treating physician Dr. Sumpter and assigned those opinions "little weight." (Tr. 37; *see* Tr. 489-90, 621-22, 740-41.) The parties agree that the ALJ could reject Dr. Sumpter's opinions by providing specific and legitimate reasons supported by substantial evidence in the record. (Doc. 16 at 12 n. 17; Doc. 17 at 13-14); *see Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) ("The ALJ could reject the opinions of Moore's examining physicians, contradicted by a nonexamining physician, only for specific and legitimate reasons that are supported by substantial evidence in the record."). However, they disagree about whether the ALJ provided sufficient reasons for discounting Dr. Sumpter's opinions.

The ALJ discounted Dr. Sumpter's opinions because she concluded that (1) the "extreme limitations" that Dr. Sumpter assessed would render Plaintiff "bedridden," and they lacked "substantial support from the objective clinical and diagnostic findings" and the treatment record; and (2) the limitations that Dr. Sumpter assessed were inconsistent with Plaintiff's conservative treatment history, her activities of daily living, and her inconsistent compliance with treatment. (Tr. 37.)

/ / /

/ / /

### 1. Lack of Support in the Medical Record for Opinions

The ALJ discounted Dr. Sumpter's opinions because she believed that the "extreme limitations" that he assessed would render Plaintiff "bedridden," and that they were not supported by objective clinical and diagnostic findings or the treatment record.[6] (Tr. 37.) The ALJ stated that she assigned Dr. Sumpter's opinions "little weight," but did not specifically identify which of the limitations Dr. Sumpter assessed that she was discounting. (*Id.*) Additionally, in her discussion of Dr. Sumpter's opinions, the ALJ did not identify the evidence in the record that detracted from those opinions. (*Id.*) The ALJ's conclusory assertion that the diagnostic and treatment record did not support the "extreme limitations" that Dr. Sumpter assessed does not satisfy the standard required for rejecting a treating physician's opinion.[7] *See* 20 C.F.R. §§ 404.1527, 416.927; *Swanson v. Sec'y of Health and Human Servs*, 763 F.2d 1061, 1065 (9th Cir.1985) (stating that an ALJ properly rejects a treating physician's opinion if he sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states his interpretation of the facts and conflicting evidence, and makes findings.).

The ALJ must do more than offer her conclusions. "[Sh]e must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988); *see also Widmark v. Barnhart*, 454 F.3d 1063, 1069 (9th Cir. 2006). The ALJ did not satisfy this burden in concluding, without explanation, that Dr. Sumpter's opinions in 2013 and 2015 lacked support in the objective medical evidence and treatment record. (Tr. 37.) Even if the record includes

---

[6] In defense of the ALJ's decision, the Commissioner states that the ALJ permissibly rejected Dr. Sumpter's opinions because they were provided on check-box forms. (Doc. 17 at 14.) The ALJ did not include this rationale in support of her rejection of Dr. Sumpter's opinions. (Tr. 37.) This court's review is limited to "reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009). Accordingly, the Court considers the rationale and facts upon which the ALJ relied in determining that Plaintiff was not disabled.

[7] The agency has amended regulations for evaluating medical evidence, but the amended regulations (in pertinent part) only apply to claims filed on or after March 27, 2017, and therefore are not relevant to this case. *See* 20 C.F.R. § 404.1527 (applicable to claims filed before March 27, 2017); § 404.1520c (applicable to claims filed after March 27, 2017).

limited objective evidence and treatment evidence, the ALJ still failed to connect that evidence, or lack of evidence, to her rejection of any particular limitation that Dr. Sumpter identified in his 2013 and 2015 opinions. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 n. 10 (9th Cir. 2017) (finding "the absence of medical records regarding alleged symptoms is not itself enough to discredit a claimant's testimony.") Therefore, the ALJ's conclusory assertion does not constitute a legally sufficient reason for discounting Dr. Sumpter's opinions.

### 2. Conservative Treatment

The ALJ also discounted Dr. Sumpter's opinions because she found them inconsistent with Plaintiff's "conservative treatment history." (Tr. 37.) Plaintiff challenges this rationale, and the Commissioner's response does not discuss or defend it. (Doc. 17 at 14-16.) As set forth below, the ALJ's characterization of Plaintiff's treatment as conservative was not a legally sufficient reason for discounting Dr. Sumpter's opinions.

"Any evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017). In *Revels*, the Ninth Circuit concluded that the ALJ erred by rejecting a plaintiff's symptom testimony based on the plaintiff's "supposedly 'conservative' treatment," including facet and epidural injections, and prescription pain medications. *Id.* at 667. In *Garrison v. Colvin*, 759 F.3d at 995, 1015 n.20 (9th Cir. 2014), the Ninth Circuit stated that it "doubt[ed] that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment." *Id.*

Here, Plaintiff received "interventional procedures" for her back pain. (Tr. 522.) Specifically, Plaintiff had lumbar epidural steroid injections (Tr. 526, 528, 536), an L4-S1 bilateral medial branch nerve block (Tr. 590-91), and lumbar radiofrequency ablation procedures. (Tr. 749, 756.) She was also prescribed medications for her pain, including Percocet and cyclobenzaprine. (Tr. 87-88.) The ALJ did not explain why she considered this treatment "conservative" for back pain. (Tr. 37.) "Moreover, the failure of a treating

physician to recommend a more aggressive course of treatment, absent more, is not a legitimate reason to discount the physician's subsequent medical opinion about the extent of disability." *Trevizo*, 871 F.3d at 677. The Court concludes that the ALJ erred by discounting Dr. Sumpter's opinions based on the ALJ's characterization of Plaintiff's treatment for her back pain as conservative.

### 3. Daily Activities

The ALJ also discounted Dr. Sumpter's opinions because she found them inconsistent with Plaintiff's "activities of daily living." (Tr. 37.) A claimant's ability to engage in daily activities that are incompatible with the severity of symptoms described by a treating physician may support the rejection of that opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014); *see Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999) (stating that an inconsistency between a treating physician's opinion and a claimant's daily activities is a specific and legitimate reason to discount the treating physician's opinion). However, as discussed below, the ALJ did not provide specific and legitimate reasons for rejecting Dr. Sumpter's opinions based on Plaintiff's activities of daily living.

In her decision, the ALJ noted that Plaintiff's daily activities included performing self-care, preparing meals, using a computer, shopping, driving, caring for pets, and handling money. (Tr. 36.) However, the ALJ did not discuss the frequency or duration of these activities. (*Id.*); *see Trevizo,* 871 F.3d at 676 (concluding that ALJ erred by relying on the claimant's activities to discount her treating physician's opinion where there were no details about the what the activities involved or the extent of those activities). Additionally, in her discussion of the weight she assigned to Dr. Sumpter's opinions, the ALJ did not identify which of Plaintiff's activities exceeded the physical limitations that Dr. Sumpter identified. (Tr. 37.)

Further, Dr. Sumpter's assessments of Plaintiff's work-related physical abilities addressed limitations on sustained and continuous activities in a work setting (Tr. 489-90, 621-22, 740-41), not her ability to perform physical activities in a non-work setting.

- 13 -

*Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014 (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical difference between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.") (citations omitted in original)).

The Court concludes that the asserted inconsistency between Plaintiff's activities of daily living and the physical limitations that Dr. Sumpter identified do not satisfy the requirement that the ALJ provide specific and legitimate reasons that are supported by substantial evidence in the record for discounting a treating physician's contradicted opinion. *See Bayliss*, 427 F.3d at 1216.

### 4. Inconsistent Compliance with Treatment

The ALJ also rejected Dr. Sumpter's opinions because she concluded that the limitations he identified were inconsistent with Plaintiff's "inconsistent compliance with treatment." (Tr. 37.) The ALJ noted that Plaintiff stopped physical therapy. (Tr. 36, 91.) The ALJ also noted that Plaintiff was prescribed Oxycodone for pain, but a July 28, 2015 treatment note indicated that a drug screen was positive for THC but negative for Plaintiff's medications, and that Plaintiff was warned to take her medications as prescribed. (Tr. 747.)

Unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment can be a legitimate basis for doubting the severity of a claimant's symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). However, here, the ALJ did not explain how Plaintiff's poor compliance with physical therapy in 2014 affects the validity of Dr. Sumpter's opinions that were rendered in January and August 2015. (Tr. 621-22, 740-41.) Additionally, while the ALJ noted the positive drug screen that was mentioned in the July 2015 treatment note, she did not discuss the related examination findings, which indicate that "palpation of the lumbosacral spine revealed

- 14 -

abnormalities," tenderness, and muscle spasms. (Tr. 746.) Additionally, lumbosacral spine motion was "abnormal," and "spine pain was elicited by motion." (*Id.*) A straight-leg raising test was positive. (*Id.*)

In summary, because the ALJ did not provide specific and legitimate reasons for discounting Dr. Sumpter's opinions that are supported by substantial evidence in the record, the ALJ erred in discounting Dr. Sumpter's opinions. *See Bayliss*, 427 F.3d at 1216. Because the Court concludes that the ALJ erred by discounting Dr. Sumpter's opinions, it does not reach Plaintiff's other asserted error. (Doc. 16 at 1-2.)

## VII. Remand for an Award of Benefits

Under the Ninth Circuit's credit-as-true standard, courts may credit as true improperly rejected medical opinions or claimant testimony and remand for an award of benefits if each of the following is satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (citing *Ryan*, 528 F.3d at 1202). If the "credit-as-true rule" is satisfied, the court may remand for further proceedings, instead of for an award of benefits, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021.

Here, the Court finds that the record has been fully developed and further administrative proceedings would serve no useful purpose. Further, as detailed above, the Court finds that the ALJ has failed to provide legally sufficient reasons for rejecting Dr. Sumpter's opinions. According to the vocational expert's testimony, if Dr. Sumpter's opinions are credited as true, Plaintiff would be disabled under the Act. (Tr. 110-12.) The record does not create serious doubt as to whether Plaintiff is disabled under the Act. *See Garrison*, 759 F.3d at 1021.

Accordingly,

**IT IS ORDERED** that the Commissioner's decision is **REVERSED** and this matter is remanded for a determination of benefits.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of Plaintiff and terminate this case.

Dated this 3rd day of October, 2018.

*(signature)*
Bridget S. Bade
United States Magistrate Judge